The Hon. Richard A. Jones

**10-CR-00336-INDI**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> Plaintiff, ) <br> v. ) <br> COLTON HARRIS-MOORE, ) <br> Defendant. ) | No. CR10-336-RAJ <br><br> PLEA AGREEMENT |

The United States of America, by and through Jenny A. Durkan, United States

Attorney for the Western District of Washington, and Darwin P. Roberts and Michael

Dion, Assistant United States Attorneys for said District, and Defendant, COLTON

HARRIS-MOORE, and his attorneys, John Henry Browne and Emma Scanlan, enter into

the following Agreement, pursuant to Federal Rule of Criminal Procedure 11(c):

    **1.**     **Waiver of Indictment**. Defendant, having been advised of the right to be

charged by Indictment, agrees to waive that right and enter a plea of guilty to the charges

brought by the United States Attorney in a Superseding Information.

    **2.**     **Waiver of Venue**. Defendant, having been advised of the fact that venue

for the Interstate Transportation of a Stolen Aircraft offense charged in Count 7 normally

PLEA AGREEMENT/HARRIS-MOORE
Case No. CR10-336-RAJ - 1

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1    would lie in the Southern District of Indiana, agrees to waive venue with respect to that

2    charge and to be prosecuted for the charge in the Western District of Washington.

3        **3.   The Charge(s).** Defendant, having been advised of the right to have this

4    matter tried before a jury, agrees to waive that right and enter his pleas of guilty to the

5    following charges contained in the Superseding Information:

6            a.   Bank Burglary, as charged in Count 1, in violation of Title 18,

7    United States Code, Section 2113(a).

8            b.   Interstate Transportation of a Stolen Aircraft, as charged in Count 2,

9    in violation of Title 18, United States Code, Section 2312.

10           c.   Interstate and Foreign Transportation of a Stolen Firearm, as charged

11   in Count 3, in violation of Title 18, United States Code, Sections 922(i) and 924(a)(2).

12           d.   Fugitive in Possession of a Firearm, as charged in Count 4, in

13   violation of Title 18, United States Code, Sections 922(g)(2) and 924(a)(2).

14           e.   Piloting an Aircraft Without a Valid Airman's Certificate, as charged

15   in Count 5, in violation of Title 49, United States Code, Section 46306(b)(7).

16           f.   Interstate Transportation of a Stolen Vessel, as charged in Count 6,

17   in violation of Title 18, United States Code, Section 2312.

18           g.   Interstate Transportation of a Stolen Aircraft, as charged in Count 7,

19   in violation of Title 18, United States Code, Section 2312.

20       By entering these pleas of guilty, Defendant hereby waives all objections to the

21   form of the charging document. Defendant further understands that before entering his

22   pleas of guilty, he will be placed under oath. Any statement given by Defendant under

23   oath may be used by the United States in a prosecution for perjury or false statement.

24       **4.   Elements of the Offenses.**

25           a.   **Bank Burglary.** The elements of the offense of Bank Burglary, as

26   charged in Count 1, in violation of Title 18, United States Code, Section 2113(a), are as

27   follows:

28           First, the defendant entered, or attempted to enter, a bank;

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1          Second, at the time charged in the indictment (or information), the

2     defendant entered or attempted to enter that bank with the intent to commit in the bank a

3     federal felony or any larceny affecting such bank; and

4          Third, the deposits of that bank were insured by the Federal Deposit

5     Insurance Corporation.

6          b.     **Interstate Transportation of a Stolen Aircraft.** The elements of

7     the offense of Interstate Transportation of a Stolen Aircraft, as charged in Counts 2 and 7,

8     are as follows:

9          First, the aircraft was stolen;

10         Second, the defendant transported the aircraft between one state and

11    another;

12         Third, the defendant knew the aircraft had been stolen at the time he

13    transported it; and,

14         Fourth, the defendant intended to permanently or temporarily deprive the

15    owner of ownership of the aircraft.

16         c.     **Interstate and Foreign Transportation of a Stolen Firearm.** The

17    elements of the offense of Interstate and Foreign Transportation of a Stolen Firearm, as

18    charged in Count 3, in violation of Title 18, United States Code, Sections 922(i) and

19    924(a)(2), are as follows:

20         First, the defendant knowingly transported a stolen firearm between a

21    foreign nation and the United States, or from one state to another; and

22         Second, the defendant knew or had reasonable cause to believe that the

23    firearm had been stolen.

24         d.     **Fugitive in Possession of a Firearm.** The elements of the offense

25    of Fugitive in Possession of a Firearm, as charged in Count 4, in violation of Title 18,

26    United States Code, Sections 922(g)(2) and 924(a)(2), are as follows:

27         First, the defendant knowingly possessed a firearm;

28

PLEA AGREEMENT/HARRIS-MOORE
Case No. CR10-336-RAJ - 3

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

Second, the firearm had been shipped or transported from one state to another, or between a foreign nation and the United States; and

Third, at the time the defendant possessed the firearm, the defendant was a fugitive from justice.

e.      **Piloting an Aircraft Without a Valid Airman's Certificate.** The elements of the offense of Piloting an Aircraft Without a Valid Airman's Certificate, as charged in Count 5, in violation of Title 49, United States Code, Section 46306(b)(7), are as follows:

First, the defendant wilfully served as an airman; and

Second, the defendant had no airman's certificate authorizing him to serve in that capacity.

An "airman" is an individual in command of an aircraft, or who serves as pilot or who navigates an aircraft when under way. 49 U.S.C. § 40102(8)(A). An "aircraft" means any contrivance invented, used, or designed to navigate or fly in the air. 49 U.S.C. § 40102(6).

f.      **Interstate Transportation of a Stolen Vessel.** The elements of the offense of Interstate Transportation of a Stolen Vessel, as charged in Count 6, in violation of Title 18, United States Code, Section 2312, are as follows:

First, the vessel was stolen;

Second, the defendant transported the vessel between one state and another;

Third, the defendant knew the vessel had been stolen at the time he transported it; and,

Fourth, the defendant intended to permanently or temporarily deprive the owner of ownership of the vessel.

5.      **The Penalties.** Defendant understands that the statutory penalties for the charged offenses are as follows:

a.      **Count 1 (Bank Burglary):** Imprisonment for up to twenty (20) years, a fine of up to Two Hundred Fifty Thousand and no/100 dollars ($250,000.00), a

PLEA AGREEMENT/HARRIS-MOORE
Case No. CR10-336-RAJ - 4

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  period of supervision following release from prison of up to three (3) years, and a special

2  assessment of one hundred and no/100 dollars ($100.00).

3           b.      **Counts 2 and 7 (Interstate Transportation of a Stolen Aircraft):**

4  Imprisonment for up to ten (10) years, a fine of up to Two Hundred Fifty Thousand and

5  no/100 dollars ($250,000.00), a period of supervision following release from prison of up

6  to three (3) years, and a special assessment of one hundred and no/100 dollars ($100.00).

7           c.      **Count 3 (Interstate and Foreign Transportation of a Stolen**

8  **Firearm):**  Imprisonment for up to ten (10) years, a fine of up to Two Hundred Fifty

9  Thousand and no/100 dollars ($250,000.00), a period of supervision following release

10  from prison of up to three (3) years, and a special assessment of one hundred and no/100

11  dollars ($100.00).

12          d.      **Count 4 (Fugitive in Possession of a Firearm):**  Imprisonment for

13  up to ten (10) years, a fine of up to Two Hundred Fifty Thousand and no/100 dollars

14  ($250,000.00), a period of supervision following release from prison of up to three (3)

15  years, and a special assessment of one hundred and no/100 dollars ($100.00).

16          e.      **Count 5 (Piloting an Aircraft Without a Valid Airman's**

17  **Certificate):**  Imprisonment for up to three (3) years, a fine of up to Two Hundred Fifty

18  Thousand and no/100 dollars ($250,000.00), a period of supervision following release

19  from prison of not more than one (1) year, and a special assessment of one hundred and

20  no/100 dollars ($100.00).

21          f.      **Count 6 (Interstate Transportation of a Stolen Vessel):**

22  Imprisonment for up to ten (10) years, a fine of up to Two Hundred Fifty Thousand and

23  no/100 dollars ($250,000.00), a period of supervision following release from prison of up

24  to three (3) years, and a special assessment of one hundred and no/100 dollars ($100.00).

25          Defendant agrees that the special assessment(s) shall be paid at or before the time

26  of sentencing.

27          Defendant understands that supervised release is a period of time following

28  imprisonment during which he will be subject to certain restrictions and requirements.

PLEA AGREEMENT/HARRIS-MOORE
Case No. CR10-336-RAJ - 5

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  Defendant further understands that if supervised release is imposed and he violates one or

2  more of its conditions, Defendant could be returned to prison for all or part of the term of

3  supervised release that was originally imposed.  This could result in Defendant serving a

4  total term of imprisonment greater than the statutory maximum stated above.

5  Defendant understands that in addition to any term of imprisonment and/or fine

6  that is imposed, the Court may order him to pay restitution to any victim of the offense, as

7  required by law.  Defendant further understands that a consequence of pleading guilty

8  may include the forfeiture of certain property either as a part of the sentence imposed by

9  the Court, or as a result of civil judicial or administrative process.

10  Defendant agrees that any monetary penalty the Court imposes, including the

11  special assessment, fine, costs, or restitution, is due and payable immediately and further

12  agrees to submit a completed Financial Statement of Debtor form as requested by the

13  United States Attorney's Office.

14  6.  **Rights Waived by Pleading Guilty.**  Defendant understands that by

15  pleading guilty, he knowingly and voluntarily waives the following rights:

16  a.  The right to plead not guilty and to persist in a plea of not guilty;

17  b.  The right to a speedy and public trial before a jury of his peers;

18  c.  The right to the effective assistance of counsel at trial, including, if

19  Defendant could not afford an attorney, the right to have the Court appoint one for him;

20  d.  The right to be presumed innocent until guilt has been established

21  beyond a reasonable doubt at trial;

22  e.  The right to confront and cross-examine witnesses against Defendant

23  at trial;

24  f.  The right to compel or subpoena witnesses to appear on his behalf at

25  trial;

26  g.  The right to testify or to remain silent at trial, at which trial such

27  silence could not be used against Defendant; and

28  h.  The right to appeal a finding of guilt or any pretrial rulings.

PLEA AGREEMENT/HARRIS-MOORE
Case No. CR10-336-RAJ - 6

7.     **United States Sentencing Guidelines**.  Defendant understands and acknowledges that, at sentencing, the Court must consider the sentencing range calculated under the United States Sentencing Guidelines, together with the other factors set forth in Title 18, United States Code, Section 3553(a), including:  (1) the nature and circumstances of the offenses; (2) the history and characteristics of the defendant; (3) the need for the sentence to reflect the seriousness of the offenses, to promote respect for the law, and to provide just punishment for the offenses; (4) the need for the sentence to afford adequate deterrence to criminal conduct; (5) the need for the sentence to protect the public from further crimes of the defendant; (6) the need to provide the defendant with educational and vocational training, medical care, or other correctional treatment in the most effective manner; (7) the kinds of sentences available; (8) the need to provide restitution to victims; and (9) the need to avoid unwarranted sentence disparity among defendants involved in similar conduct who have similar records.  Accordingly, Defendant understands and acknowledges that:

a.     The Court will determine his applicable Sentencing Guidelines range at the time of sentencing;

b.     After consideration of the Sentencing Guidelines and the factors in 18 U.S.C. 3553(a), the Court may impose any sentence authorized by law, up to the maximum term authorized by law;

c.     The Court is not bound by any recommendation regarding the sentence to be imposed, or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Department, or by any stipulations or agreements between the parties in this Plea Agreement; and

d.     Defendant may not withdraw a guilty plea solely because of the sentence imposed by the Court.

8.     **Sentencing Factors**.  The parties agree that the following Sentencing Guidelines provisions apply to this case:

a.   For the offense of Bank Burglary, as charged in Count 1, a base offense level of 12, pursuant to Section 2B2.1(a)(2).

b.   For the offense of Interstate Transportation of a Stolen Aircraft, as charged in Count 2, a base offense level of 6, pursuant to Section 2B1.1(a)(2);

c.   The parties agree that the offense level associated with Count 2 should be increased by 12, because the amount of loss for Count 2 was more than $200,000.00, but less than $400,000.00, pursuant to Section 2B1.1(b)(1)(G) and (H).

d.   For the offense of Interstate and Foreign Transportation of a Stolen Firearm, as charged in Count 3, a base offense level of 14, pursuant to Section 2K2.1(a)(6)(A);

e.   The parties agree that the offense level associated with Count 3 should be increased by 2, because the offense charged in Count 3 involved a stolen firearm, pursuant to Section 2K2.1(a)(6) and (b)(4);

f.   The parties agree that the offense level associated with Count 3 should be increased by 4, because the defendant used or possessed the firearm in connection with another felony offense, pursuant to Section 2K2.1(b)(6).

g.   For the offense of Fugitive in Possession of a Firearm, as charged in Count 4, a base offense level of 14, pursuant to Section 2K2.1(a)(6)(A);

h.   The parties agree that the offense level associated with Count 4 should be increased by 2, because the offense charged in Count 4 involved a stolen firearm, pursuant to Section 2K2.1(a)(6) and (b)(4);

i.   The parties agree that the offense level associated with Count 4 should be increased by 4, because the defendant used or possessed the firearm in connection with another felony offense, pursuant to Section 2K2.1(b)(6).

j.   For the offense of Interstate Transportation of a Stolen Vessel, as charged in Count 6, a base offense level of 6, pursuant to Section 2B1.1(a)(2);

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

k.   The parties agree that the offense level associated with Count 6 should be increased by 14, because the amount of loss for Count 6 was more than $400,000.00, but less than $1,000,000.00, pursuant to Section 2B1.1(b)(1)(H) and (I).

l.   For the offense of Interstate Transportation of a Stolen Aircraft, as charged in Count 7, a base offense level of 6, pursuant to Section 2B1.1(a)(2);

m.   The parties agree that the offense level associated with Count 7 should be increased by 14, because the amount of loss for Count 7 was more than $400,000.00, but less than $1,000,000.00, pursuant to Section 2B1.1(b)(1)(H) and (I).

n.   The parties agree to a two-point addition to Defendant's Criminal History score, because Defendant committed the offenses charged in Counts 1 through 7 within five years of a previous juvenile sentence to confinement of at least sixty days (Residential Burglary, June 27, 2007), pursuant to Section 4A1.2(d)(2)(A);

o.   The parties agree to a one-point addition to Defendant's Criminal History score, because Defendant committed the offenses charged in Counts 1 through 5 within five years of a previous juvenile sentence to confinement of less than sixty days (Burglary, February 28, 2005), pursuant to Section 4A1.2(d)(2)(B);

p.   The parties agree to a two-point addition to Defendant's Criminal History score, because Defendant committed the offenses charged in Counts 1 through 7 while on escape status from a criminal justice sentence, pursuant to Section 4A1.1(d).

The parties agree they are free to argue the application of any other provisions of the United States Sentencing Guidelines. The parties further agree to recommend to the Court a sentence within a range of 63 to 78 months.

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1    Defendant understands that the Court will determine the Sentencing Guidelines

2    applicable to the remaining counts of conviction, as well as Defendant's combined

3    offense level for all of his offenses. Defendant understands that at the time of sentencing,

4    the Court is free to reject the parties' stipulated adjustments and/or recommendation, and

5    is further free to apply additional downward or upward adjustments in determining

6    Defendant's Sentencing Guidelines range.

7    9.    **Incarceration.** The parties jointly recommend, pursuant to 18 U.S.C.

8    § 3584(a), that the sentence imposed in this case be served concurrently with any sentence

9    imposed by the Superior Courts of the State of Washington between the time of the entry

10   of this Plea Agreement and the imposition of sentence in this cause. The Government

11   understands that Defendant wishes to serve his federal sentence in a state facility.

12   Accordingly, the parties agree to request that the Court recommend that the Federal

13   Bureau of Prisons designate a Washington state facility as the place at which Defendant

14   shall serve his federal sentence, pursuant to 18 U.S.C. § 3621(b).

15   10.    **Ultimate Sentence.** Defendant acknowledges that no one has promised or

16   guaranteed what sentence the Court will impose.

17   11.    **Restitution.** Defendant shall make restitution to the victims of his offenses

18   as required by law. Defendant shall make restitution to the persons, and in the amounts,

19   set forth in the Schedule of Restitution, with credit for any amounts already paid. Said

20   amount shall be due and payable immediately and shall be paid in accordance with a

21   schedule of payments as proposed by the United States Probation Office and ordered by

22   the Court.

23   12.    **Statement of Facts.** The parties agree on the following facts. Defendant

24   admits he is guilty of the charged offenses.

25   On or about April 29, 2008, COLTON HARRIS-MOORE escaped without lawful

26   permission from the Friends of Youth Griffin Home in Renton, Washington, where he

27   was serving a custodial sentence pursuant to a conviction under Washington state law.

28   Not later than September 12, 2009, he fled the State of Washington with the intent to

PLEA AGREEMENT/HARRIS-MOORE
Case No. CR10-336-RAJ - 10

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  avoid apprehension or prosecution, making him thereafter a fugitive from justice as

2  defined in Title 18, United States Code, Section 921(a)(15).

3       On or about September 5, 2009, HARRIS-MOORE did unlawfully enter Islanders

4  Bank in Eastsound, Washington, with the intent to commit larceny therein. During the

5  nighttime burglary, HARRIS-MOORE intended to break in to the ATM and the night

6  deposit box and steal the cash inside. In committing this unlawful entry, HARRIS-

7  MOORE made use of tools he had stolen during a burglary at a nearby Ace Hardware

8  store. On the date of HARRIS-MOORE's unlawful entry into Islanders Bank, the bank

9  was insured by the Federal Deposit Insurance Corporation. The unlawful entry resulted

10 in damages and loss to Islanders Bank of not less than $1,000.00.

11      During the month of September, 2009, HARRIS-MOORE traveled from Orcas

12 Island, through Point Roberts, Washington, into Delta, British Columbia, east to Creston,

13 British Columbia, and then south into Idaho.

14      On or about September 27, 2009, in Boundary County, Idaho, HARRIS-MOORE

15 did unlawfully enter an unoccupied structure belonging to K.T., with the intent to commit

16 the crime of theft. At the same time, in a continuing course of conduct, HARRIS-

17 MOORE did take the property of another with the intent to deprive the owner of said

18 property, to wit: a digital camera belonging to K.T.

19      On or about September 29, 2009, in Boundary County, Idaho, HARRIS-MOORE

20 did unlawfully enter an unoccupied structure, namely an aircraft hangar belonging to S.J.,

21 with the intent to commit the crime of theft. At that same time, in a continuing course of

22 conduct, HARRIS-MOORE did take the property of another with the intent to deprive the

23 owner of said property, to wit: a GPS system belonging to S.J.

24      On or about September 29, 2009, in Boundary County, Idaho, HARRIS-MOORE

25 did take the property of another with the intent to deprive the owner of said property, to

26 wit: a North Face sleeping bag belonging to P.G.

27      On or about September 29, 2009, HARRIS-MOORE did unlawfully transport a

28 stolen aircraft, namely, a Cessna T182T, tail number N2183P, knowing the same to be

PLEA AGREEMENT/HARRIS-MOORE
Case No. CR10-336-RAJ - 11

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1   stolen, from Bonners Ferry, in Boundary County, in the State of Idaho, to the State of

2   Washington, ending in Snohomish County, near Granite Falls, Washington. In doing so,

3   HARRIS-MOORE intended to temporarily or permanently deprive the owner of

4   ownership of the aircraft. HARRIS-MOORE acquired the aircraft by breaking into a

5   hangar at the Boundary County Airport. He flew the aircraft for several hours without

6   filing a flight plan or making any safety-related communications with air traffic control or

7   other aircraft, until the aircraft ran low on fuel. HARRIS-MOORE crash landed the

8   aircraft, resulting in the destruction of the aircraft and a loss to its owner of not less than

9   $340,000.00.

10        Between on or about September 24, 2009, and October 2, 2009, HARRIS-

11   MOORE did unlawfully transport a stolen firearm, knowing the same to be stolen,

12   namely, a .32 caliber semi-automatic pistol, from British Columbia, Canada, into the

13   United States, through the State of Idaho, to the State of Washington, ending near Granite

14   Falls, Washington. HARRIS-MOORE stole the pistol while committing a burglary at the

15   airport in Creston, British Columbia. He then carried it with him across the border from

16   British Columbia into Idaho, and on his flight in Cessna N2183P from Idaho to

17   Washington.

18        Between on or about September 29, 2009, and May 2, 2010, HARRIS-MOORE,

19   then being a fugitive from justice as defined in Title 18, United States Code, Section

20   921(a)(15), did knowingly possess a firearm in Snohomish, Skagit, and San Juan

21   Counties, Washington, namely, a Jennings .22 caliber semi-automatic pistol, said pistol

22   having previously been transported in interstate commerce. HARRIS-MOORE stole the

23   pistol while committing a residential burglary near Granite Falls, Washington, and later

24   stored it in a hiding place in an aircraft hangar at the Eastsound Airport, Orcas Island,

25   Washington, where he did not have permission to be present.

26        On or about February 10, 2010, HARRIS-MOORE, knowing that he did not

27   possess a valid airman's certificate to serve as an airman, did wilfully serve as an airman

28   in piloting an aircraft, namely, a Cirrus SR22, tail number N47LG, from Anacortes,

PLEA AGREEMENT/HARRIS-MOORE
Case No. CR10-336-RAJ - 12

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  Washington, to Eastsound, Washington.  HARRIS-MOORE flew the aircraft without

2  filing a flight plan or making any safety-related communications with air traffic control or

3  other aircraft, and damaged the aircraft on landing.

4       On or about May 31, 2010, HARRIS-MOORE did unlawfully transport a stolen

5  vessel, namely, one 34' Ocean Sport, registration number WN 9906 NW, knowing the

6  same to be stolen, from Ilwaco, in the State of Washington, to Warrenton, in the State of

7  Oregon.  In doing so, HARRIS-MOORE intended to temporarily or permanently deprive

8  the owner of ownership of the vessel.  The vessel had a value of not less than

9  $450,000.00.

10       Between on or about May 31, 2010, and July 4, 2010, HARRIS-MOORE traveled

11  through Oregon and then eastward, eventually arriving in Indiana.

12       On or about June 11, 2010, in Ada County, Idaho, HARRIS-MOORE did take the

13  property of another with the intent to deprive the owner of said property, to wit: a 2006

14  Ford F-150 truck belonging to M.M.  During the same course of conduct, HARRIS-

15  MOORE did take two pairs of eyeglasses from M.M. with the intent to deprive M.M., the

16  rightful owner, of said property.

17       On or about June 12, 2010, in Teton County, Idaho, HARRIS-MOORE did

18  unlawfully enter an unoccupied structure, namely an aircraft hangar belonging to A.B.,

19  with the intent to commit the crime of theft.  At that same time, in a continuing course of

20  conduct, HARRIS-MOORE did take the property of another with the intent to deprive the

21  owner of said property, to wit: a gray Cadillac Escalade belonging to A.B.

22       On or about June 13, 2010, in Johnson County, Wyoming, HARRIS-MOORE did

23  take the property of another with the intent to deprive the owner of said property, to wit: a

24  2005 Cadillac CTSV belonging to J.I.

25       On or about June 13, 2010, in Johnson County, Wyoming, HARRIS-MOORE did

26  take the property of another with the intent to deprive the owner of said property, to wit: a

27  Lincoln pickup truck belonging to D.M.

28

PLEA AGREEMENT/HARRIS-MOORE
Case No. CR10-336-RAJ - 13

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

On or about June 13, 2010, in Lawrence County, South Dakota, HARRIS-MOORE did enter and remain in an unoccupied structure, namely Spearfish Airport, with the intent to commit the crime of theft. During the same course of conduct, HARRIS-MOORE did take the property of another with the intent to deprive the rightful owner of said property, to wit: $150.00 in United States Currency taken from the Spearfish Airport. On or about June 14, 2011, in Lawrence County, South Dakota, HARRIS-MOORE did enter and remain in an unoccupied structure, namely Spearfish Airport, with the intent to commit the crime of theft. At that same time, in a continuing course of conduct, HARRIS-MOORE did take the property of another with the intent to deprive the owner of said property, to wit: a 2008 Ford F150 belonging to R.A.

On or about June 15, 2010, in Pierre, South Dakota, HARRIS-MOORE did unlawfully enter the Pierre Regional Airport Terminal and the Airport Fire Station. While in the Airport Fire Station, HARRIS-MOORE did unlawfully access a computer without the permission of the owner, take an 8GB iPod Touch that did not belong to him, and a frozen dinner. During the same course of conduct, HARRIS-MOORE did unlawfully enter the Pierre Regional Airport Terminal and once inside caused damage to drawers in the Budget Rental Car kiosk. In addition, HARRIS-MOORE did cause damage to the terminal glass doors and the airport manager's office door. As a part of the same series of events, HARRIS-MOORE did take the keys to a Silver Ford Edge SUV ND-JGA339 that belonged to AVIS Rental Car.

On or about June 18, 2010, in Yankton County, South Dakota, HARRIS-MOORE did enter an occupied structure with intent to commit a crime therein and threatened to inflict physical harm on another, to wit: K.K. at the K. residence.

On or about June 19, 2010, in Yankton County, South Dakota, HARRIS-MOORE did take the property of another with the intent to deprive the owner of said property, to wit: a 2008 Toyota Sequoia belonging to L.L. and D.L.

On or about June 19, 2010, in Madison County, Nebraska, HARRIS-MOORE did willfully break into Karl Stefan Memorial Airport with the intent to steal property. In the

PLEA AGREEMENT/HARRIS-MOORE
Case No. CR10-336-RAJ - 14

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  same course of conduct, HARRIS-MOORE did take the movable property of another with

2  the intent to deprive the rightful owner of the property, to wit: a 2008 Cadillac Escalade

3  belonging to A.W.

4         On or about June 21, 2010, in Pella, Marion County, Iowa, HARRIS-MOORE did

5  unlawfully and without permission of the rightful owner Pella Classic Aviation Inc., take

6  a 2000 Dodge Caravan, VIN 1B4GP74LXYB527757.  In the same course of conduct and

7  series of events, HARRIS-MOORE did unlawfully and without permission of the rightful

8  owner Pella Classic Aviation Inc., take $450.00 in United States currency located inside

9  of the Pella Community Airport.

10        Between on or about June 27, 2010, and July 4, 2010, in Monroe County, Indiana,

11  HARRIS-MOORE did unlawfully enter an unoccupied structure, namely an aircraft

12  hangar belonging to M.M., with the intent to commit the crime of theft. At that same time,

13  in a continuing course of conduct, HARRIS-MOORE did take the property of another

14  with the intent to deprive the owner of said property, to wit: a Radio Shack Pro 97 1000

15  channel scanner and a pair of Bose headphones owned by M.M.

16        Between on or about June 27, 2010, and July 4, 2010, in Monroe County,

17  Harris-Moore did unlawfully enter an unoccupied structure, namely an aircraft hangar

18  belonging to J.B.

19        On or about July 4, 2010, in Monroe County, Indiana, HARRIS-MOORE did

20  unlawfully enter an unoccupied structure, namely an aircraft hangar belonging to J.M.,

21  with the intent to commit the crime of theft.

22        On or about July 4, 2010, HARRIS-MOORE did unlawfully transport a stolen

23  aircraft, namely, a Cessna Corvalis, tail number N660BA, knowing the same to be stolen,

24  from Bloomington, Monroe County, Indiana, out of the State of Indiana to a point outside

25  the United States, located on Abaco Island, Bahamas.  In doing so, HARRIS-MOORE

26  intended to temporarily or permanently deprive the owner of ownership of the aircraft.

27  HARRIS-MOORE acquired the aircraft by breaking into a hangar at the Bloomington

28  airport.  He flew the aircraft for several hours without filing a flight plan or making any

PLEA AGREEMENT/HARRIS-MOORE
Case No. CR10-336-RAJ - 15

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1   safety-related communications with air traffic control or other aircraft. He flew in a

2   southeasterly direction, crossing several states before leaving the continental United

3   States at a point near Parris Island, South Carolina, and continuing until the aircraft ran

4   low on fuel in the Bahamas. HARRIS-MOORE crash-landed the aircraft, resulting in the

5   destruction of the aircraft and the loss of associated equipment, and a loss to its owner of

6   not less than $618,988.00.

7        Defendant agrees that the total loss amount attributable to his actions, for purposes

8   of sentencing, is not less than $1,409,438.00.

9        13.   **Non-Prosecution of Additional Offenses.** As part of this Plea Agreement,

10   the United States Attorney's Office for the Western District of Washington agrees not to

11   prosecute Defendant for any additional offenses known to it as of the time of this

12   Agreement that are based upon evidence in its possession at this time, and that arise out

13   of the conduct giving rise to this investigation. In this regard, Defendant recognizes the

14   United States has agreed not to prosecute all of the criminal charges the evidence

15   establishes were committed by Defendant solely because of the promises made by

16   Defendant in this Agreement. Defendant agrees, however, that for purposes of preparing

17   the Presentence Report, the United States Attorney's Office will provide the United States

18   Probation Office with evidence of all conduct committed by Defendant.

19        Defendant agrees that any charges to be dismissed before or at the time of

20   sentencing were substantially justified in light of the evidence available to the United

21   States, were not vexatious, frivolous or taken in bad faith, and do not provide Defendant

22   with a basis for any future claims under the "Hyde Amendment," Pub.L. No. 105-119

23   (1997).

24        14.   **Acceptance of Responsibility.** The United States acknowledges that if

25   Defendant qualifies for an acceptance of responsibility adjustment pursuant to USSG

26   § 3E1.1(a), and if the offense level is sixteen (16) or greater, his total offense level should

27   be decreased by three (3) levels pursuant to USSG §§ 3E1.1(a) and (b), because he has

28   assisted the United States by timely notifying the authorities of Defendant's intention to

PLEA AGREEMENT/HARRIS-MOORE
Case No. CR10-336-RAJ - 16

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1   plead guilty, thereby permitting the United States to avoid preparing for trial and

2   permitting the Court to allocate its resources efficiently.

3        15.   **Forfeiture.**  Defendant agrees to forfeit to the United States immediately all

4   of Defendant's right, title, and interest in any and all property, real or personal, tangible or

5   intangible, constituting or derived from, or representing or traceable to, the gross

6   proceeds Defendant obtained, directly or indirectly, as the result of the offenses charged

7   in the Superseding Information, that are subject to forfeiture pursuant to Title 18, United

8   States Code, Sections 981(a)(1)(C) and 982(a)(5), and Title 28, United States Code,

9   Section 2461(c), including but not limited to the following assets:

10        a.   A money judgment of forfeiture in the amount of $959,438.00.

11        b.   Intellectual property rights to, and profits or proceeds from publicity related

12   to Defendant's criminal activity ("Publicity"), to the extent set forth in paragraph 16,

13   below.

14   Defendant agrees that each of the listed assets constitutes or is derived from, or represents

15   or is traceable to, the gross proceeds Defendant obtained, directly or indirectly, as a result

16   of the offenses charged in the Superseding Information that are subject to forfeiture as set

17   forth above.

18        Defendant agrees to fully assist the United States in the forfeiture of the listed

19   assets and to take whatever steps are necessary to pass clear title to the United States,

20   including but not limited to: surrendering title and executing any documents necessary to

21   effectuate such forfeiture; assisting in bringing any assets located outside the

22   United States within the jurisdiction of the United States; and taking whatever steps are

23   necessary to ensure that assets subject to forfeiture are not sold, disbursed, wasted,

24   hidden, or otherwise made unavailable for forfeiture.  Defendant agrees not to file a claim

25   to any of the listed property in any civil forfeiture proceeding, administrative or judicial,

26   which may be initiated.

27        Defendant further agrees to provide a truthful accounting regarding all of

28   Defendant's assets and to make a full and complete disclosure of all assets in which

PLEA AGREEMENT/HARRIS-MOORE
Case No. CR10-336-RAJ - 17

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1   Defendant has any interest or over which Defendant exercises control and those which are

2   held or controlled by a nominee(s).  Defendant further agrees to submit to a polygraph

3   examination on the issue of assets if it is deemed necessary by the United States.

4   The United States reserves its right to proceed against any remaining assets not

5   identified in this Plea Agreement, including any property in which Defendant has any

6   interest or control, if said assets, real or personal, tangible or intangible, represent or are

7   traceable to the gross proceeds Defendant obtained, directly or indirectly, as the result of

8   the offenses charged in the Superseding Information, that are subject to forfeiture

9   pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(5), and Title

10   28, United States Code, Section 2461(c).

11   Defendant further agrees to waive all constitutional and statutory challenges in any

12   manner (including direct appeal, habeas corpus, or any other means) to any forfeiture

13   carried out in accordance with this Plea Agreement on any grounds, including that the

14   forfeiture constitutes an excessive fine or punishment.

15   **16.   Forfeiture and Assignment of Profits or Proceeds from Publicity and**

16   **Intellectual Property Rights.**

17   **a.   Definitions.**

18   "Conduct" means any conduct, event, crime, or action, or sequence thereof,

19   alleged in the Superseding Indictment or Superseding Information, described in the

20   Statement of Facts in this Plea Agreement, or charged in any case involving Defendant

21   that is the subject of a Plea Agreement in the Superior Court of Washington entered into

22   within one year following the date of this Plea Agreement.  It is intended to encompass

23   any of the crimes, and all of the time spent as a fugitive, that led to Defendant's notoriety,

24   including but not limited to Defendant becoming and/or being known as the "Barefoot

25   Bandit" or "Barefoot Burglar."

26   "Contract" means the current negotiations by Defendant to option and sell limited

27   intellectual property rights arising from the Conduct for the purpose of filming a motion

28

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1   picture based upon Defendant and the Conduct, and any legal agreement resulting from

2   such negotiations.

3       "Defendant" means Colton Harris-Moore, signatory to this Plea Agreement, and

4   any and all of his heirs, agents, designees, representatives, and/or assigns.

5       "Person" means any natural person, corporation, general partnership, limited

6   partnership, limited liability company or partnership, proprietorship, other business

7   organization, trust, union, or association, and includes Defendant.

8       "Proceeds" means all products, proceeds, profits, benefits, revenue, royalties,

9   payments, properties, assets, compensation, allowances, loans, rights, estates, grants,

10   options, contracts, consideration, remuneration, equities, shares of ownership, and any

11   other things of value, current or future, including without limitation all instruments,

12   money, and claims for money.

13       "Publicity" means any current or future publication or other dissemination of

14   information, or any other description, promotion, sale, or branding, concerning, relating

15   to, describing, derived from, created during, or based on the Conduct, including

16   Defendant's Rights concerning the Conduct, in whole or in part, and any derivative works

17   based in whole or in part thereon. "Publicity" includes (for example, but is not limited to)

18   any motion picture, book, interview, article, posting, documentary, transcription, diary,

19   journal, narration, commentary, screenplay, recording, memoir, or correspondence,

20   whether in electronic and/or print form; any broadcast, presentation, series, show, or other

21   description using television, radio, Internet, social media, or any other medium, electronic

22   or otherwise; any game, computer application, contest or simulation, electronic or

23   otherwise; any live entertainment or event of any kind; any merchandise, toy, model,

24   replica, memento, souvenir, collectible, ephemera, branding, label, promotional material,

25   or endorsement; or any other publicity or material, in any jurisdiction worldwide, any of

26   which arises out of any description, expression, relation, recording, interview or writing

27   or other memorialization of, or regarding, the Conduct, or knowledge, facts, recollections,

28   descriptions, thoughts, feelings, opinion or emotions concerning or evoking the Conduct.

PLEA AGREEMENT/HARRIS-MOORE
Case No. CR10-336-RAJ - 19

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1     "Rights" means any compensated, compensable, saleable, or other monetized

2 intellectual property right or other proprietary right, in any jurisdiction worldwide, in any

3 Publicity, whether now existing or made, acquired, or created after the date of this

4 Agreement. "Rights" includes, for example, all copyrights, trademark rights, rights of

5 publicity, rights of personality, life story rights, and moral rights, including all such rights

6 to any categories of information described under "Publicity." "Rights" shall also include

7 any and all rights held or acquired by the Defendant concerning the use of the phrases

8 "Barefoot Bandit" or "Barefoot Burglar," or any other catchphrase or nickname

9 associated with Defendant and/or the Conduct. "Rights" specifically includes any rights

10 that would be reserved to Defendant under the Contract. "Rights" does not include any

11 non-compensated intellectual property right, such as non-compensated public speech

12 concerning the Conduct, or similar non-compensated right.

13     "Victims" means any and all persons and entities to whom and to which Defendant

14 must make restitution as required by law, pursuant to this Plea Agreement and the

15 Schedule of Restitution, regardless of the legal jurisdiction in which they might be

16 located.

17         **b.**    **Statement of Purpose and Intent.**

18     The United States and Defendant agree that Defendant should not profit from his

19 crimes.

20     Defendant acknowledges and agrees that the purpose and intent of this Forfeiture

21 and Assignment is to ensure that any Proceeds obtained by, available to, or owed to the

22 Defendant, as a consequence of or related to any Rights and/or Publicity concerning the

23 Conduct, are forfeited in their entirety to the United States for the benefit of Victims.

24 Any such Proceeds are intended to be made available for the compensation of Victims

25 through restitution and/or remission proceedings, subject to the provisions of applicable

26 federal law. It is intended that Defendant shall not retain or benefit from any Proceeds

27 whatsoever, either directly or indirectly, regardless of whether or not any Proceeds should

28

PLEA AGREEMENT/HARRIS-MOORE
Case No. CR10-336-RAJ - 20

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1   exceed the gross amount owed by Defendant as restitution to Victims, or any specific

2   amount ordered forfeited to the United States.

3          Defendant and the United States further agree that the purpose and intent of this

4   Forfeiture and Assignment is to ensure that any Rights, including intellectual property

5   rights, are also forfeited in their entirety to the United States.  Defendant and the United

6   States agree, however, to the following exception to the forfeiture of intellectual property

7   rights: Defendant has disclosed that he has been participating in negotiations to option

8   and sell limited intellectual property rights arising from the Conduct for the purpose of

9   filming a motion picture based upon Defendant and the Conduct (the "Contract").  As

10  described below, Defendant will retain, solely to transfer for consideration and

11  compensation for the benefit of the Victims, those intellectual property rights necessary to

12  complete the pending Contract for a film depiction of Defendant and the Conduct, subject

13  to the final approval or disapproval of the United States, on the conditions described

14  below, including that 1) the Contract and related documents and negotiations are

15  reviewed by the Special Master, 2) the Special Master recommends that the Contract

16  meets the purposes of this Agreement, and 3) any and all of Defendant's Proceeds from

17  said contract shall be paid directly to and forfeited to the United States for the benefit of

18  Victims.

19               c.      **Forfeiture and Assignment of Proceeds.**

20         Defendant agrees to forfeit to the United States immediately all of Defendant's

21  right, title, and interest of every kind in any and all Proceeds, now or in the future, derived

22  from or related to any Publicity concerning the Conduct, or any other exercise of Rights

23  related to the Conduct, as well as any other Proceeds relating to the Conduct.  Defendant

24  agrees that such Proceeds constitute or derive from, or represent or are traceable to, the

25  gross proceeds Defendant obtained, directly or indirectly, as a result of the offenses

26  charged in the Superseding Indictment or Information, and/or described in the Statement

27  of Facts in this Plea Agreement.

28

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  Defendant agrees to take any necessary steps of the type described in paragraph 15,

2  above, to deliver clear title to any such property to the United States. Defendant agrees

3  that all provisions of paragraph 15, above, are incorporated herein and apply fully, except

4  to the extent specifically stated otherwise herein.

5  **d.      Defendant's Assignment/Sale of Rights.**

6  Defendant represents that he has not received any Proceeds arising out of or

7  relating to Publicity concerning the Conduct, nor has he entered any binding contract

8  relating to the sale of Rights concerning Publicity for any purpose. Defendant represents

9  that all recent drafts and all material aspects of negotiations relating to the Contract have

10  been provided to the Special Master.

11  Defendant and the United States agree that Defendant may engage in and complete

12  the Contract selling the intellectual property rights for the limited purpose described

13  herein, provided that all compensation and proceeds from said sale are paid directly to

14  and forfeited to the United States for the benefit of Victims, consistent with this

15  Agreement, and subject to the final agreement of the United States and the supervisory

16  powers of the Special Master, as described below.

17  After execution of the Contract, should the buyer fail to exercise its rights in a

18  manner that results in the reversion or return of any rights to Defendant, said Rights shall

19  be forfeited to the United States in the same manner as any other such Rights under this

20  Agreement. Defendant agrees and understands that should this occur, any sale by

21  Defendant of any portion of the Rights to another buyer, for the benefit of Victims, must

22  first be authorized by the United States, in the exercise of its sole discretion. Defendant

23  shall not take any steps to sell, assign, transfer or solicit any other sale of Rights without

24  the consent of the United States.

25  **e.      Appointment and Powers of Special Master.**

26  To ensure fair dealing and to protect the interests of the Victims in the Proceeds of

27  the Contract, the United States and Defendant jointly agree to the appointment of a

28  Special Master. The Special Master shall review the proposed Contract and advise the

PLEA AGREEMENT/HARRIS-MOORE
Case No. CR10-336-RAJ - 22

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  parties and the Court whether the Contract is consistent with the purpose of this

2  Agreement. The Special Master will be nominated by the United States and approved by

3  the Court. The United States nominates Kraig Baker as Special Master.

4      Defendant agrees to cooperate fully with the Special Master, as follows. Upon

5  appointment of the Special Master, Defendant shall immediately and fully disclose to the

6  Special Master all actions, negotiations, or agreements already in progress, taken, or

7  reached with respect to Defendant's Rights and the Contract. On an ongoing basis,

8  Defendant agrees to disclose any pertinent documents or communications for the Special

9  Master's review, at the Special Master's request. Defendant agrees that the Special

10  Master may independently verify all such information, and may discuss all such

11  information with the United States. If necessary to fully effectuate this Agreement,

12  Defendant agrees to waive as to the Special Master and the United States any applicable

13  legal privileges as between Defendant and any Person representing Defendant concerning

14  his Rights regarding the Conduct, including executing any documents necessary to do so.

15  No such waiver shall include, however, any legal privileges with respect to Defendant's

16  criminal defense.

17      Defendant agrees he shall not authorize, enter into, finalize, or approve any

18  agreement or contract concerning his life story rights, his Rights generally, the Conduct,

19  and/or any related Publicity unless and until the Special Master has reviewed that

20  agreement or contract, and advises the United States that the Contract is consistent with

21  the purpose of this Forfeiture and Assignment, and this Plea Agreement generally, and the

22  United States in turn agrees to the Contract. The Special Master shall report whether the

23  Contract conforms to the following principles: 1) it transfers those Rights that are

24  sufficient, but not greater than necessary, for the purpose of producing and distributing a

25  motion picture based upon Defendant and the Conduct; 2) it does not interfere with the

26  forfeiture of all Defendant's other Rights to the United States, consistent with this

27  Forfeiture and Assignment; and 3) it achieves the greatest benefit reasonably possible for

28  Victims.

PLEA AGREEMENT/HARRIS-MOORE
Case No. CR10-336-RAJ - 23

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1    The Special Master shall also report whether he believes there has been any
2    improper action by Defendant or his representatives, including but not limited to
3    (1) dealing through side deals or other agreements for the benefit of Defendant or any
4    other Person other than the United States or the Victims, (2) attempting to evade the
5    provisions of this Plea Agreement, or any other agreement Defendant entered into as part
6    of a criminal case, (3) charging professionally inappropriate or excessive fees or
7    payments, or (4) using or attempting to use Proceeds or other funds related to the Contract
8    to pay any fees or costs of Defendant's criminal defense.

9    The parties agree that based upon the report of the Special Master, the United
10   States may approve or decline to approve any agreement or Contract, in the sole
11   discretion of the United States. The United States and Defendant further agree that if
12   approved by the Special Master as reasonable, the buyer under the Contract may pay
13   Defendant's representative's reasonable costs or fees, which were needed to acquire
14   Defendant's Proceeds for the benefit of Victims. Such fees constitute a cost of acquiring
15   Defendant's Proceeds and will be deducted prior to forfeiture or transfer to the United
16   States. The United States and Defendant agree that the reasonable fees of the Special
17   Master, as approved by the United States and/or the U.S. District Court, also constitute a
18   necessary cost of acquiring said Proceeds and may also be deducted from said Proceeds
19   prior to forfeiture or transfer to the United States. Provided however, that no such
20   reasonable fees or costs to any individual shall exceed 10% (ten percent) of the amounts
21   paid under the Contract.

22   The Special Master will conduct his or her business efficiently so as to ensure
23   maximum recovery for Victims. The Special Master shall have authority to take any steps
24   he or she deems necessary and proper for the protection, security, and effectual use of the
25   Rights and any resulting Proceeds, including if necessary contracting, retention, and
26   compensation of individuals or entities with specialized knowledge or expertise who can
27   assist, or have assisted, with the effectual sale, marketing, use, or protection of the Rights
28   and any resulting Proceeds, as approved by the United States.

PLEA AGREEMENT/HARRIS-MOORE
Case No. CR10-336-RAJ - 24

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1    Nothing in this Forfeiture and Assignment requires Defendant to personally

2    participate in any Publicity regarding the Conduct.

3        **f.    Defendant's Warranties and Good Conduct Agreements.**

4    Defendant agrees that his signature on this Plea Agreement represents his full,

5    knowing, and informed agreement and consent to this Forfeiture and Assignment.

6    Defendant agrees to act in a manner consistent with the provisions of this Forfeiture and

7    Assignment. Defendant agrees not to attempt to evade or undermine this Forfeiture and

8    Assignment. Defendant agrees not to communicate with any Person about the Conduct in

9    order to obtain or attempt to obtain for Defendant, for any friend, associate, or family

10   member of Defendant, or for any other Person, any Proceeds that would not be subject to

11   this Forfeiture and Assignment. Defendant agrees not to obtain, or attempt to obtain,

12   Proceeds or other benefits for himself or any other Person through side agreements, third-

13   party-beneficiary contracts, or any other arrangements for the benefit of himself or any

14   other Person. Defendant agrees to abide by, and act in a manner consistent with, the

15   decisions of the Special Master. Defendant acknowledges that his conditions of

16   incarceration will be set by the Bureau of Prisons and/or Department of Corrections, and

17   that the United States is not granting him any special privileges or access while in

18   custody. Defendant agrees that his failure to act in a manner consistent with the

19   provisions of this Forfeiture and Assignment shall constitute a breach of this Plea

20   Agreement.

21       17.    **Forfeiture of Contraband.** Defendant agrees that if any firearms or illegal

22   contraband were seized by any law enforcement agency from the possession of

23   Defendant, or that were or had been in the direct or indirect control of Defendant, then

24   Defendant consents to the administrative forfeiture, official use, and/or destruction of said

25   firearms or contraband by any law enforcement agency involved in the seizure of these

26   items.

27       18.    **Breach, Waiver, and Post-Plea Conduct.** Defendant agrees that if

28   Defendant breaches this Plea Agreement, the United States may withdraw from this Plea

PLEA AGREEMENT/HARRIS-MOORE
Case No. CR10-336-RAJ - 25

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1   Agreement and Defendant may be prosecuted for all offenses for which the United States

2   has evidence. Defendant agrees not to oppose any steps taken by the United States to

3   nullify this Plea Agreement, including the filing of a motion to withdraw from the Plea

4   Agreement. Defendant also agrees that if Defendant is in breach of this Plea Agreement,

5   Defendant has waived any objection to the re-institution of any charges in the Indictment

6   that were previously dismissed or any additional charges that had not been prosecuted.

7          Defendant further understands that if, after the date of this Agreement, Defendant

8   should engage in illegal conduct, or conduct that is in violation of his conditions of

9   confinement (examples of which include, but are not limited to: obstruction of justice,

10  failure to appear for a court proceeding, criminal conduct while pending sentencing, and

11  false statements to law enforcement agents, the Pretrial Services Officer, Probation

12  Officer, or Court), the United States is free under this Agreement to file additional

13  charges against Defendant or to seek a sentence that takes such conduct into consideration

14  by requesting the Court to apply additional adjustments or enhancements in its Sentencing

15  Guidelines calculations in order to increase the applicable advisory Guidelines range,

16  and/or by seeking an upward departure or variance from the calculated advisory

17  Guidelines range. Under these circumstances, the United States is free to seek such

18  adjustments, enhancements, departures, and/or variances even if otherwise precluded by

19  the terms of the plea agreement.

20          19.    **Waiver of Appeal.** As part of this Plea Agreement and on the condition

21  that the Court imposes a custodial sentence that is within or below the Sentencing

22  Guidelines range (or the statutory mandatory minimum, if greater than the Guidelines

23  range) that is determined by the Court at the time of sentencing, Defendant waives to the

24  full extent of the law:

25          a.     any right conferred by Title 18, United States Code, Section 3742 to appeal

26                 the sentence, including any restitution order imposed; and

27

28

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

b.     any right to bring a collateral attack against the conviction and sentence, including any restitution order imposed, except as it may relate to the effectiveness of legal representation.

Furthermore, this waiver does not preclude Defendant from bringing an appropriate motion pursuant to 28 U.S.C. 2241, to address the conditions of his confinement or the decisions of the Bureau of Prisons regarding the execution of his sentence.

If Defendant breaches this Plea Agreement at any time by appealing or collaterally attacking (except as to effectiveness of legal representation) the conviction or sentence in any way, the United States may prosecute Defendant for any counts, including those with mandatory minimum sentences, that were dismissed or not charged pursuant to this Plea Agreement.

20.     **Voluntariness of Plea.**  Defendant agrees that Defendant has entered into this Plea Agreement freely and voluntarily and that no threats or promises, other than the promises contained in this Plea Agreement, were made to induce Defendant to enter these pleas of guilty.

21.     **Statute of Limitations.**  In the event this Agreement is not accepted by the Court for any reason, or Defendant has breached any of the terms of this Plea Agreement, the statute of limitations shall be deemed to have been tolled from the date of the Plea Agreement to:  (1) thirty (30) days following the date of non-acceptance of the Plea Agreement by the Court; or (2) thirty (30) days following the date on which a breach of the Plea Agreement by Defendant is discovered by the United States Attorney's Office.

//
//
//
//
//
//
//

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

22.  **Completeness of Agreement.** The United States and Defendant acknowledge that these terms constitute the entire Plea Agreement between the parties. This Agreement binds only the United States Attorney's Office for the Western District of Washington (and the United States Attorney's Office for the Southern District of Indiana, as to Count 7). It does not bind any other United States Attorney's Office or any other office or agency of the United States, or any state or local prosecutor.

DATED this ___17 th___ day of ___June___, 2011.


_____
COLTON HARRIS-MOORE
Defendant


_____
JOHN HENRY BROWNE
EMMA SCANLAN
Attorneys for Defendant


_____
DARWIN P. ROBERTS
MICHAEL DION
Assistant United States Attorneys


_____
ANDREW C. FRIEDMAN
Assistant United States Attorney

PLEA AGREEMENT/HARRIS-MOORE
Case No. CR10-336-RAJ - 28

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970