IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 2:10-cr-00336-RAJ-1 |
| Plaintiff, | |
| vs. | OBJECTION TO PLAINTIFF'S "SUPPLEMENTAL" RESPONSE AND REPLY THERETO |
| COLTON HARRIS-MOORE, | |
| Defendant | |

The Plaintiff, through the United States Attorney, filed a "supplemental response" on May 8, 2019. The supplement does not serve to correct any previously cited legal authority but raises new arguments and should not be considered. F.R.P.C. 7.1.

In the alternative, should the court consider the plaintiff's supplement, Mr. Harris Moore has determined he must reply to the supplement and does so as follows:

The United States Attorney, objects to a probationer's request to terminate probation five months early. A probationer by all accounts has performed exemplary on probation. A probationer "who could not do anything better", according to his probation officer. A probationer against all odds has pulled himself out of the criminal justice system with the exception of supervised probation.

OBJECTION TO PLAINTIFF'S "SUPPLEMENTAL" RESPONSE AND REPLY THERETO - 1

Mr. Harris Moore adamantly stands by what he was told by probation and specifically Ms. McGlynn and which she is apparently denying.  However, he has the same reasons now for requesting terminate as when he filed the motion:

1. The court has the authority to terminate probation early;

2. Mr. Harris Moore has been exemplary on probation;

3. Mr. Harris Moore has offered a compromise of unsupervised probation for the remaining five months, keeping him accountable to the public and the court;

4. There is no longer the need to use public resources to monitor this case on "active" probation, considering there is but one more visit scheduled by probation nor use the resources of the United States attorney to reply to his request.

We are frankly perplexed by the government's heated response and its apparent need to use all resources to fight this motion.  Mr. Harris Moore understands, and is confident, in the Court's ability to decide this motion.  He has proven exactly what should be proven – that change is possible and he has performed extraordinarily well on supervised release.

Colton Harris Moore is willing to certify under penalty of perjury that Officer McGlynn was the officer who told him a request to travel he should "expect to take three months" and any business partner's finances would necessarily be disclosed and inspected by probation as is Mr. Harris Moore's finances. He offers the following details surrounding these statements, and other statements like them:

On multiple occasions starting about October 2, 2016, when Officer McGlynn and Mr. Harris-Moore met for the first time, up to the time his case was transferred to his current probation officer, it was conveyed to Mr. Harris Moore that a travel request in his case would take a significant amount of time to process, vet, and approve.  Establishment of both the exceptional difficulty of international travel and time restrictions on any travel, is exemplified as follows: In 2016, Mr. Harris Moore, was in talks to be a potential participant in the hit TV show, "Alone," seen on History Channel, now in its 6th season.  The conversations regarding his

OBJECTION TO PLAINTIFF'S "SUPPLEMENTAL" RESPONSE AND REPLY THERETO - 2

participation started during Season 3 and continued into Season 4, with talks being held from late 2016 and going through the majority of 2017. In this Series, contestants enter the wilderness for indefinite or prolonged period of time in order to "out-last" one another, with the winner being the one who lasted longest in the wilderness.  Officer McGlynn informed him it not only would not be possible to travel to a foreign country for such period of time, but that even if the TV series was domestically located, Mr. Harris Moore would need to seek approval, which would assuredly be denied because: "[P]robation officers are not going to go into the wilderness to check on a client." (Contestants are not allowed to leave the contest).  Even with prize money of $500,000, Mr. Harris Moore could not further the relationship due to the fact he was and is on federal probation.

It was never stated to Mr. Harris-Moore until after this motion was filed, that the approval process for traveling would take a mere two weeks.  In fact, Mr. Moran has stated "two weeks" more than anyone else previously, and the individuals supposedly quoted never at any time indicated that it would be as swift as a process as Mr. Moran portrays.

From the day Officer McGlynn and Mr. Harris Moore met, Mr. Harris Moore was inquiring into the process of the ability to visit friends domestically and internationally. He also inquired into the process by which supervision may be terminated early.  These inquiries are continually brought up by Mr. Harris Moore, thus dispelling Mr. Moran's notion that Mr. Harris-Moore suffers from the whims of boredom.

It is disingenuous for the Government to argue that no form of specialized treatment of Mr. Harris Moore's case is in evidence when the very fact of the United States attorney replying and objecting, by pleading and in the media, to Mr. Harris Moore's well-brought request to terminate probation five months early.

To date, Mr. Harris Moore has had two Federal and two State probation officers.  All the officers engaged in detailed conversations by phone, in person, or by email, with Mr. Harris Moore, discussing travel plans and/or early termination, starting from the day supervision began.

OBJECTION TO PLAINTIFF'S "SUPPLEMENTAL" RESPONSE AND REPLY THERETO - 3

Any argument to the contrary is false. The fact is, the various aspects of this situation have culminated to this point in time, including Mr. Harris-Moore's desire to have an established track-record of compliance and consistency before filing such a motion. Although Mr. Harris-Moore is tired of probation, the full scope of the matter at hand is the opposite of merely "being tired of probation," as initially commented by the Plaintiff.

### Mr. Harris-Moore Is Not A Victim Of His Celebrity

The simplistic summary on the part of the Plaintiff, regarding Mr. Harris Moore's "fame," assumes the age-old adage of "all publicity is good publicity." Mr. Harris-Moore has had inaccurate news stories, multi-page articles, books, documentaries, and other forms of media, which are largely works of fiction, follow him like a plague.  A recent Google search of news coverage of this very motion may establish the fact that not all media or attention is created the same, be it in their outright claims, their sources, their spin, what scope of time they cover, their overall portrayal, or most-importantly, the sometimes subtle but ever-important implications of the story. The media coverage, depending on who is publishing it, does not always serve to create a positive outcome - especially when the media uses pictures which are, in some cases, over 12 years old, showing Mr. Harris Moore both as a child, and involved in criminal activity.  It is not the job of the reader to know or see past the overwhelming number of inaccuracies or factual flaws or even be able to detect the inherent bias. It is the job of the writer, the reporter(s), the author, the host, to tell the truth. Yet, we know from nearly any story we read on nearly any subject, this is not always the case when a story is accurate, fair, unbiased, or even true.

Further, readers hear, "The Barefoot Bandit was caught after stealing five airplanes." That media coverage, in that kind of context and circumstance, both promotes and propagates the notion of Mr. Harris Moore is a "no good criminal."  Mr. Harris Moore has not committed a single crime since July 2010 nearly ten years ago, yet, he continually finds himself battling assumptions of being an active criminal.  The Plaintiff should concede that the positive aspects

OBJECTION TO PLAINTIFF'S "SUPPLEMENTAL" RESPONSE AND REPLY THERETO - 4

of my client's "fame," such as being able to negotiate and sell a movie contract based on my client's past and the lessons learned therefrom, is at least equally matched by mass public sentiment which is based, at its core, on the assumption created by the media that my client is both infamous and notorious; a criminal whose bad habits never went away.  Mr. Harris-Moore is not by any means claiming to be a victim of a largely self-inflicted series of events - yet, not all publicity is good.

It is the intention of Mr. Harris-Moore to continue to turn all aspects of his life into positive experiences.  One of the things he intends to continue pursuing is public speaking. The Plaintiff has used the number "$20,000" several times in reference to Mr. Harris Moore's opportunity in the field of public speaking. However, we merely stated the income range is $10,000 to $20,000.  That is not overblown and comes from Dustin Lance Black, the screenwriter of the movie cited directly by the Plaintiff. Mr. Harris-Moore assumes $10,000 for the purposes of calculating what he would have been able to earn, if he could have managed his travel schedule and speaking engagements.

The Plaintiff's statement that "'Other people on supervision have their own compelling stories, full of struggles, hardship, mistakes, successes, and hopes.  But nobody will pay them to speak, because they are not The Barefoot bandit." It is true Mr. Harris Moore is not special being the only one with experiences to speak about, the Plaintiff makes a shocking claim, for it assumes Mr. Harris-Moore is the only one who ever had or will speak with a checkered past and receive an income based on it.  Of course, we know this is not true. I submit that each person has a story in his or her past that was a mistake on their part or bad judgment or even intentional bad act and that incident or incidents help form who they are today – successful and Every day, all over the world, people who come from tough backgrounds, rise to speak and inspire others. And they get paid to do so.

We would expect the United States attorney to be above name calling. Apparently, not so. Plaintiff taunts Mr. Harris Moore by calling him the "Barefoot Bandit" – a moniker Mr.

OBJECTION TO PLAINTIFF'S "SUPPLEMENTAL" RESPONSE AND REPLY THERETO - 5

Harris Moore is actively leaving behind and never adopted in the first place. Really surprising this seems to be done to see such a respected position stoop to that level. My client's name is Colton Harris Moore, not "The Barefoot Bandit."

**CLOSING**

How something so straightforward could be as inaccurately interpreted is disappointing. The Plaintiff's response is based nearly exclusively on the point of travel restrictions, without acknowledging what we have said many times: Travel restrictions are but one aspect of this motion.

A successful term of probation consists of a dual outcome: 1. Protection of the community by reducing crime and 2) Maximizing the defendant's success during the period of supervision and beyond.  Mr. Harris Moore has not committed a crime, planned a crime or thought of planning a crime in close to ten years.  The risk of criminal behavior is as close to zero as it can be.  Probation can no longer maximize or help Mr. Harris Moore's success. There are no correctional strategies in place; only controlling restrictions. . Keeping him on probation with the attendant restrictions can only curtail his planned successes.  In this case, probation no longer serves either of its dual purposes and should be terminated.

What sets Mr. Harris Moore apart is not his media attention - what sets him apart is the long period of time in which Mr. Harris Moore has acted and remained consistent in demonstrating real commitment to fulfilling his obligations, accomplishing honorable goals, while not running from the negativity but rather embracing it for the benefit of other people to see it, learn from it, be inspired by the entirety of the story, and benefit in any way they can. What sets Mr. Harris Moore apart is what he is asking the Court help him do.

Mr. Harris Moore acknowledges the significant advantage he has in being able to communicate publicly, and be a demonstrator of what hard work, consistency, and the right mindset may earn you both in successfully moving on after going through the justice system.  He appreciates having the ability to move into many fields, including the public speaking arena. Yet,

OBJECTION TO PLAINTIFF'S "SUPPLEMENTAL" RESPONSE AND REPLY THERETO - 6

nothing was handed to Mr. Harris Moore. He has unique experiences, learns from his mistakes, and is humbled by the legitimacy he has in being able to tell a unique story with the aim of helping other people.

Mr. Harris Moore is not an "outlaw hero," as proclaimed by the Plaintiff.  He is a real person. A humble person, with a past, with mistakes, with hopes, and with dreams.  He is also with disadvantages. These disadvantages are systematic, are disempowering, while being almost wholly out of Mr. Harris Moore's control.  These disadvantages have had a significant and undeniably detrimental impact on Mr. Harris Moore's life, both personal and professional.  It is not available for the Plaintiff to qualify that as true or false, for it exists as a fact that anyone may see.

Again, we respectfully submit the resolution of this issue by ordering unsupervised probation.  That is a real compromise and a real solution that can benefit all parties and we ask the Court to so order.

Respectfully submitted this 13th day of May 2019.

_____/s Colleen A. Hartl_____
COLLEEN A. HARTL, WSBA #18015
Attorney for Colton Harris Moore
23321 62nd Avenue South, #E103
Kent, WA 98032
Tel: 206-715-2715 Fax: 206-260-3424
colleen@hartllaw.com

OBJECTION TO PLAINTIFF'S "SUPPLEMENTAL" RESPONSE AND REPLY THERETO - 7